**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILED
November 1, 2005

CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| **DANIELLE DIANE DELHOMME** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | Civil Action 3:05-CV-505-R |
| | § | |
| **CAREMARK RX INC., and** | § | |
| **CAREMARK PCS, f/k/a** | § | |
| **ADVANCEPCS** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Danielle Diane Delhomme ("Plaintiff") has filed suit against Caremark Rx., Inc. and CaremarkPCS f/k/a Advance PCS (collectively, the "Defendants") to recover shares of Caremark Rx stock that she claims she is owed.  Defendants have counterclaimed for costs and attorney fees. Defendants now move to dismiss the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons discussed below, the Court **DENIES** Defendants' motion to dismiss.

### I. BACKGROUND

The facts according to the complaint are as follows: Prior to 1996, Plaintiff owned stock in Advance Health Care, Inc.  Compl. ¶12.  During that time she owned a total of 1717 shares of Advance Health Care stock that were issued to her – Diane Lanford Arthur – in varying amounts on five different stock certificates numbered C87, C97, C99, C101, and C103.  *Id.*  In 1996, Advance Health Care went public and became Advance Paradigm, Inc.  *Id.* ¶13.  As part of that restructuring, Advance Health Care's common stock was split 250:1, converting each share of Advance Health Care into 250 shares of Advance Paradigm.  *Id.*

1

After the stock split, "Advance Paradigm held [Plaintiff's] shares in trust... until later in 1996, when they [sic] finally issued to [her] approximately twenty percent (20%) of the... 419,250 shares to which she was entitled."[1] *Id.* ¶14. Those shares were issued to her, in the name of Danielle Diane Delhomme, on five different stock certificates (C0151-55), each representing a different number shares. *Id.* After these certificates were issued, "Advance Paradigm continued to hold the remaining shares the remaining shares in trust for [her]." *Id.* After 1996, shares of Advance Paradigm underwent two, 2:1 stock splits: one in October 1999 and the other in November 2001, after the company changed its name to AdvancePCS. *Id.* ¶15.

On March 24, 2004, Caremark acquired AdvancePCS. *Id.* ¶16. As part of the acquisition, Advance PCS changed its name to CaremarkPCS and became a wholly-owned, direct subsidiary of Caremark. *Id.* According to the agreement governing Caremark's acquisition of AdvancePCS, Plaintiff was entitled to 1.935 shares of Caremark stock and $7.01, per share of AdvancePCS. *Id.* ¶17. Under those terms (and in light of the previous stock splits), Plaintiff estimates that she is entitled to 2,635,470 shares of Caremark stock and $9,547,620.00 in cash. *Id.*

On or about January 3, 2005, Plaintiff requested that Caremark issue certificates for the 1,021,500 additional shares of AdvancePCS that she was owed; convert her 1,362 shares of AdvancePCS stock into 2,635,470 shares of Caremark stock; and pay her $9,547,620.00 in cash. *Id.* ¶18. Caremark did not comply with the request, much less respond to it. *Id.* ¶19. Plaintiff then filed suit in state court on February 4, 2005, and Defendants removed to this Court on March 14.

## II. ANALYSIS

---

[1]There is a mathematical error somewhere in Plaintiff's calculation since 1717 shares of Advance Health Care should be converted into 429,250 shares of Advance Paradigm after a 250:1 stock split.

In their motion to dismiss, Defendants argue that Plaintiff's claims accrued in 1996 and are therefore barred by the relevant statutes of limitations.  *See* Def.'s Br. at 1.  In response, Plaintiff contends that Defendant's motion to dismiss "is untimely and patently defective [since] [they] have waived any motion under [Rule] 12(b)(6) by filing an answer, amended answer, and a second amended answer."  Pl.'s Resp. Br. at 1.  Additionally, Plaintiff argues that "the motion should be treated as a motion for summary judgement" under Rule 56 since Defendants included "matters outside the pleadings" in their motion to dismiss – a quarterly statement (Form 10-Q) that was filed with the Securities and Exchange Commission on November 13, 1996.  *Id.* at 3.  Lastly, Plaintiff argues that even if the motion is found to be properly before the court, her claims accrued in January 2005 since that is when she unsuccessfully demanded that Defendants relinquish her unissued shares.

### A.      Defendants' Rule 12(b)(6) Motion to Dismiss is timely.

Plaintiff argues that Defendants have waived their opportunity to file a motion to dismiss under Rule 12(b)(6) since they have already filed an answer, an amended answer, and a second amended answer.  Pl.'s Resp. at 1.  In response, Defendants maintain that they have not waived the right to file a Rule 12(b)(6) motion since they explicitly raised Plaintiff's failure to state a claim as their first affirmative defense in their answer. Def.'s Reply at 2-3; *see also*, Answer ¶30; First Am. Answer ¶30; Second Am. Answer ¶30.

Under the Federal Rules of Civil Procedure, any motion filed under Rule 12(b) "shall be made before pleading if a further pleading is permitted."  Fed. R. Civ. Proc. 12(b).  Although Defendants filed an answer to the complaint before submitting their Rule 12(b)(6) motion, they listed "failure to state a claim for which relief may be granted" as an affirmative defense in their

answer.  In that situation, several courts interpreting Rule 12(b)(6) have chosen to consider a post-answer motion to dismiss as properly before the court as long as the movant also raised the defense of failure to state a claim in his or her answer.  *See, e.g., Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico*, 304 F.Supp.2d 903, 907 (W.D.Tex. 2003); *Quintanilla v. K-Bin, Inc.*, 993 F.Supp. 560, 562 (S.D.Tex. 1998) (citing *Gerakaris v. Champagne*, 913 F.Supp. 646, 650-51 (D.Mass. 1996)); *Tobin v. University of Maine System*, 59 F.Supp.2d 87, 89 (D.Me. 1999); *Molnlycke Health Care AB v. Dumex Medical Surgical*, 64 F.Supp.2d 448, 449 n.1 (E.D.Pa. 1999).  Contrary to what Plaintiff argues, "courts do not mechanically or routinely deny any motion made after a responsive pleading as untimely."  *Puckett,  v. United States*, 82 F.Supp.2d 660, 663 (S.D.Tex.1999).  If the defendant has previously included failure to state a claim for which relief may be granted as an affirmative defense in his or her answer to the complaint, "thereby giving notice" of the defense, then courts will generally permit a Rule 12(b)(6) motion to be filed after the answer.  *Id.*; *see also*, 5B Wright & Miller, Federal Practice and Procedure: Civil 3d §1361 at 93 & n.6 (West 2004) (collecting cases).

In support of her claim for waiver and outright dismissal of Defendants' motion, Plaintiff cites to *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F.Supp.2d 986, 992 (S.D.Tex. 2004), in which the court found that a motion to dismiss under Rule 12(b)(6) was "untimely" since the motion was filed after the party had filed a responsive pleading.  There are two reasons why that case is not persuasive.  First, the court in *Pollo Loco* incorrectly paraphrases 5B Wright & Miller, Federal Practice and Procedure: Civil 3d §1357 at 408 (West 2004) for the proposition that a court should deny an "untimely" motion to dismiss under Rule 12(b)(6).  *See El Pollo Loco*, 344 F.Supp.2d at 992.  But the treatise does not say that.  When one reads §1357, it states that

"[t]echnically... a post-answer Rule 12(b)(6) motion is untimely and the cases indicate that some other vehicle such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the plaintiff's failure to state a claim for relief."  5B Wright & Miller, Federal Practice and Procedure: Civil 3d §1357 at 408 (West 2004).  None of the cases that the treatise cites in §1357 for this point of law supports outright dismissal for a post-answer Rule 12(b)(6) motion. *See id*. at 408-09 n.3 (collecting cases).  The treatise lists the cases cited as authority with parenthetical comments stating that the courts in those cases properly chose to consider the motion as a Rule 12(c) motion for judgment on the pleadings.  *See id*.[2]  The *Pollo Loco* decision is even more surprising when one compares section 1361 of Wright & Miller, entitled "Timing of Rule 12(b) Motions."  In that section, the treatise states that "under Rule 12(h) the defense[] of... failure to state a claim upon which relief can be granted... [is] preserved from the waiver mechanism... [and] may be considered by the court even when interposed after the responsive pleading has been filed." *See* Wright & Miller §1361, at 95 (citations omitted).[3]

---

[2] Although it is a procedural *faux pas* to file a Rule 12(b)(6) motion to dismiss after having filed a responsive pleading in which the defense is not preserved, it is not necessary for the courts to add more shame by denying the motion outright without considering its merits.  The more sensible and efficient option would be to construe the motion as a motion for judgment on the pleadings under Rule 12(c) since the standard of review under Rule 12(b)(6) also applies to motions for judgment on the pleadings under Rule 12(c).  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) ("the standards for deciding motions under both rules [12(b)(6) and 12(c)] are the same").  Although the Fifth Circuit has not explicitly spoken on whether an untimely 12(b)(6) motion should be dismissed outright, other courts that have considered the issue have decided against outright dismissal.  *Compare Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) (district court should not have considered post-answer motion to dismiss under Rule 12(b)(6) but instead "should have" considered it under Rule 12(c) or Rule 12(h)(2)), *with Filo America, Inc. v. Olhoss Trading Co., L.L.C.*, 321 F.Supp.2d 1266, 1267-68 (M.D.Ala. 2004) (although Rule 12(b)(6) motion filed after answer is inappropriate, court has discretion to treat it as motion for judgment on pleadings); *Marrero v. Modern Maintenance Bldg. Services, Inc.*, 318 F.Supp.2d 721, 723 (E.D.Wis. 2004) (choosing to treat a post-answer 12(b)(6) motion as a Rule 12(c) motion for partial judgment on the pleadings); *Summers v. Howard Univ.*, 127 F.Supp.2d 27, 29 (D.D.C. 2000) (court could exercise its discretion and choose to treat a post-answer motion to dismiss under Rule 12(b)(6) as a Rule 12(c) motion for judgment on the pleadings).

[3] In relevant part, Rule 12(h)(2) states that "[a] defense of failure to state a claim upon which relief can be granted... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."  *Id*.

The second reason that the *Pollo Loco* decision does not support outright dismissal is because the court also dismissed the motion on an adequate and independent substantive ground of decision.  The *Pollo Loco* court found that despite the untimeliness, the legal basis for the motion was premised on an incorrect choice of law.  *See El Pollo Loco*, 344 F.Supp.2d at 992.  On that fact alone, the Court ruled that dismissal was appropriate.  If anything, these observations render Plaintiff's point of law from *Pollo Loco* unpersuasive dicta, at best, or an incorrect statement of law, at worst.

Since Defendants listed the defense of failure to state a claim as an affirmative defense in their responsive pleadings, the Court finds that they properly preserved the right to file a motion to dismiss under Rule 12(b)(6).  Therefore, the Court finds that Defendants' Rule 12(b)(6) motion is timely and is properly before the Court.

**B.      Standard of Review under Rule 12(b)(6)**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is disfavored in the law and rarely granted.  *See Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-movant.  *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). The complaint will only be dismissed if it appears beyond doubt that the claimant can prove no set of facts in support of its claim that would entitle it to relief. *See Campbell*, 43 F.3d at 975; *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994).  The relevant question is not whether the claimant will prevail but whether it is entitled to offer evidence to support its claims.  *See Cross Timbers Concerned Citizens v. Saginaw*,

6

991 F.Supp. 563, 571 (N.D.Tex. 1997).  "While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff." *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir.1994). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)); *see also, Taylor v. Books A Million*, 296 F.3d 376, 378 (5th Cir. 2002).

In ruling on a Rule 12(b)(6), "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).  The court may, however, "take judicial notice of documents in the public record, including documents filed with the Securities and Exchange Commission..., and may consider such documents in determining a motion to dismiss." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005) (citing *Lovelace*, 78 F.3d at 1017-18).  The only limitation is that the documents "should be considered only for the purpose of determining what statements [they] contain, not to prove the truth of [their] contents." *Lovelace*, 78 F.3d at 1018 (citing *Hennessy v. Penril Datacomm Networks*, 69 F.3d 1344, 1354-55 (7th Cir. 1995)); *see also, In re Azurix Corp. Securities Litigation*, 198 F.Supp.2d 862, 877 (S.D.Tex. 2002).

### C.   Defendants' submission of the Form 10-Q does not covert its Rule 12(b)(6) Motion into an Motion for Summary Judgment in this situation

In her response brief, Plaintiff argues that Defendants' Rule 12(b)(6) motion is improper for two additional reasons.  First, she argues that Defendants' submission of a Form 10-Q converts its motion to dismiss into a motion for summary judgment under Rule 56 since a disclosure statement is a "matter outside the pleading."  Pl.'s Resp. Br. at 3.  Second, she argues that since the motion

7

must be converted into a motion for summary judgment, Defendants have failed to comply with the local rules governing the manner in which motions for summary judgment are submitted to the Court. *See id.* at 3-4. For the reasons stated below, the Court disagrees with Plaintiff's first premise and finds that Defendants' submission of the financial disclosure statement does not convert its motion to dismiss into a motion for summary judgment.

Contrary to what Plaintiff argues, "the mere submission of extraneous materials does not by itself convert a Rule 12(b)(6) motion into a motion for summary judgment." *Downs v. Liberty Life Assurance Co. of Boston*, 2005 WL 2455193 *4 (N.D.Tex. 2005) (quoting *Finley Lines Joint Protective Board v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997)). When "matters outside the pleadings" are submitted in support or in opposition to a Rule 12(b)(6) motion dismiss, Rule 12(b) grants the courts discretion to accept and consider those materials but does not require them to do so. Fed. R. Civ. Proc. 12(b); *see also, Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999), *cert. denied*, 528 U.S. 967 (1999) (court has discretion to consider extrinsic materials submitted in conjunction with a Rule 12(b)(6) motion but is not required to do so).

The only obligation that Rule 12(b) imposes on the court is conditional on whether the court accepts materials "outside the pleadings" that are *neither* referenced in the complaint *nor* matters of public record that may be judicially noticed. *See* Fed. R. Civ. Proc. 12(b); *Lovelace v. Software Spectrum Inc.*, 78 F.3d at 1018. If the Court decides to consider any such extraneous material, then the Court must treat the Rule 12(b)(6) motion as a motion for summary judgment under Rule 56. Fed. R. Civ. Proc. 12(b). In that situation, the Court must also give the parties notice of the conversion and a reasonable opportunity to present all pertinent evidence. *Id.* By contrast, if the

Court refuses to consider those materials outside the pleadings, then the Rule 12(b)(6) motion remains intact and may be disposed of on its merits under the appropriate standard of review.

As mentioned previously, a document that is filed publicly with the SEC, like a Form 10-Q, is a matter of public record and may be considered in ruling on a motion to dismiss. *R2 Investments LDC*, 401 F.3d at 640 n.2. The only limitation on a court considering matters of public record in conjunction with a Rule 12(b)(6) motion is that the documents may only be considered to "determin[e] what statements [they] contain, not to prove the truth of [their] contents." *Lovelace*, 78 F.3d at 1018 (citations omitted).

Here, Defendants offer the Form 10-Q, dated October 1996, to show that Plaintiff's claims "accrued" in 1996 under the relevant statutes of limitations. Defendants note that the factual allegations in Plaintiff's complaint state that her claims arise from incidents that occurred in 1996 – the stock split and the subsequent issuance of less than the full amount of shares that she was owed. To show that her claims "accrued" in 1996, Defendants offer a Form 10-Q financial disclosure statement that was publicly filed with the SEC in October 1996. The document mentions that a 250:1 stock split occurred that year, just as Plaintiff alleges in the complaint. Defendants argue that because the Form 10-Q was publicly filed, "Plaintiff was aware of, or at the very least legally charged with knowledge of, the facts giving rise to her claims" in 1996 for purposes of the relevant statutes of limitations. Def.'s Br. at 3 n.2 & 3-4.

The Court finds that this is an entirely appropriate use of a Form 10-Q in a Rule 12(b)(6) motion to dismiss. Defendants are offering the disclosure statement to show that Plaintiff, in 1996, was either aware of or had knowledge of facts giving rise to her claim (e.g., the 250:1 stock split) since the Form 10-Q was publicly filed with the SEC in October 1996 and disclosed to the public

that a stock split had occurred.  This disclosure, Defendants argue, implies that Plaintiff was aware of or had knowledge of a 250:1 stock split occurring that year and should have known how it would affect her rights as a shareholder.  This is a permissible use of the Form 10-Q under Fifth Circuit law since this Court may take notice that a financial disclosure statement was filed with the SEC in October 1996 and that it reported that a 250:1 stock split occurred earlier that year.

What Defendants are *not* doing is offering the statement to prove the truth of its contents – i.e. that a 250:1 stock split occurred that year.  If that were so, the Court would be obligated under Rule 12(b)(6) to convert the motion to dismiss into a motion for summary judgment.  Because the issue of whether a 250:1 stock split *actually occurred* in 1996 is irrelevant to whether Plaintiff was aware of or had knowledge of *news* of a 250:1 stock split, the Court finds that the Defendants' Rule 12(b)(6) motion remains intact, despite the submission of additional evidence.

### D.    Plaintiffs have pled sufficient facts to withstand dismissal under Rule 12(b)(6) for lapse of the limitations period

A statute of limitations defense may be properly raised in a Rule 12(b)(6) motion to dismiss when the complaint affirmatively shows that the claims are time-barred.  *United States v. Bantau*, 907 F.Supp. 988, 990 (N.D.Tex.1995) (citing *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir.1958)); *see also, Doe v. Linam*, 225 F.Supp.2d 731, 734 (S.D.Tex. 2002).  Rule 12(b)(6) dismissal may also be appropriate "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."  *Jones v. Alcoa*, 339 F.3d 359, 366 (5th Cir. 2003); *see also*, *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362, 1366-70 (5th Cir.1994) (dismissing claim as time barred under Rule 12(b)(6) where claim was filed after the applicable statute of limitations had run and the pleadings established that plaintiff could not invoke the discovery rule).

In Texas, a cause of action accrues and the applicable limitations period begins to run "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 3 (Tex. 1996). Defendants maintain that the Court should find that Plaintiff's claims accrued in 1996 since she "knew" that the Agreement and Plan of Merger governing the stock split had been "breached" when she received less than the number of shares to which she was entitled. Def.'s Br. at 4. Since Plaintiff admits in her complaint that she received less than the number of shares to which she was entitled "sometime" in 1996, Defendants argue (for purposes of this motion only) that the Court should find that her causes of action accrued on December 31, 1996. *Id.* The accrual date, they argue, is unaffected by the three subsequent stock splits since Plaintiff was initially harmed before those events. *Id.* at 4-5. Since it is undisputed that Defendants honored the terms of those stock splits, Defendants contend that those splits only affect the additional damages that Plaintiff may claim resulted from the alleged 1996 breach; they do not affect her date of injury. *Id.* at 5 n.4 (citing *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 365 (5th Cir. 2000)).

Assuming, then, that Plaintiff's claims accrued at the very latest on December 31, 1996, Defendants argue that her claims – for replevin and a declaratory judgment establishing her entitlement to cash and additional stock – are barred by the applicable statutes of limitations. *See* Def.'s Br. at 5. With respect to Plaintiff's replevin claim, Defendants note that an action for "taking or detaining the personal property of another" is subject to a two-year statute of limitations. *Id.* (citing Tex .Civ. Prac. & Rem. Code §16.003); *see also, Kubosh v. City of Houston*, 96 S.W.3d 606, 608 (Tex.App.– Houston [1st Dist.] 2002, pet denied) ("Suits for the conversion of personal property

and the taking or detaining of personal property are governed by a two-year statute of limitations.")
(citing same).

Although Defendants concede that "it is unclear how Texas law would characterize
Plaintiff's declaratory judgment action," they argue that the limitations period would be at most four
years. Def.'s Br. at 5. Defendants base this conclusion on §§16.004 and 16.051 of the Texas Civil
Practice and Remedies Code, both of which establish a four-year limitations period. Section 16.004
applies to "action[s] for a debt," and §16.059 is the residual limitations period that applies to causes
of action for which there is no express limitations period.

By contrast, Plaintiff contends that her causes of action did not accrue until January 2005
since that is the date when Defendants failed to honor her request for the withheld shares. *See* Pl.'s
Resp. Br. at 5. Before that time, she argues, "Defendants had made not actionable claim on her
property" since they were holding her shares "in trust" for her. *Id.* at 6. Therefore, she claims that
"the initial harm... did not occur... at the time of the stock split in 1996" but rather in January 2005
when Defendants wrongfully withheld her shares. *Id.*

The Court notes that the accrual date for the relevant limitations period depends on if
Defendants held the unissued shares in "trust" for Plaintiff after 1996. In this situation, the question
of whether a trust existed between Plaintiff and Defendants comes dangerously close to appearing
like a "conclusory allegation" or an unsupported "legal conclusion" designed to evade Rule 12(b)(6)
dismissal years after the limitations periods lapsed. *See Blackburn*, 42 F.3d at 931 ("[C]onclusory
allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a
motion to dismiss."); *see also*, *Matthews v. High Island Indep. School Dist.*, 991 F.Supp. 840, 845
(S.D.Tex. 1998) (dismissal on plaintiff's allegation that Defendants' acts and omissions constituted

"quid pro quo sexual harassment, as those terms are known under well-established federal case law" was appropriate since no factual pleadings existed in the complaint to substantiate the charge that Defendant or anyone else required sexual favors in exchange for job benefits); *Bender v. Suburban Hospital, Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) (plaintiff could not withstand dismissal under Rule 12(b)(6) by merely labeling certain relationships as "employment relationships.").

As mentioned previously, a court ruling on a 12(b)(6) motion must construe all factual allegations as true. However, in situations like these when a "conclusory allegation" or an "unclear question of law" appears within the factual allegations of the complaint, the court retains discretion to construe that issue *against* the plaintiff. *See, e.g., Kansa Reinsurance Co., Ltd.*, 20 F.3d at 1366 ("While the district court must accept as true all factual allegations in the complaint, *it need not resolve* unclear questions of law in favor of the plaintiff.") (emphasis added). This Court recognizes that dismissal under Rule 12(b)(6) is a disfavored remedy. Therefore, the Court chooses to assume that a trust existed between the parties for purposes of this motion only since it is true – in theory – that Plaintiff may be able to show some set of facts in support of her claim that would entitle her to relief. *See Askanase v. Fatjo*, 828 F.Supp. 465, 469 (S.D.Tex. 1993) (In ruling on a motion to dismiss under Rule 12(b)(6), "[w]here the issue of limitations requires a determination of when a claim begins to accrue, the complaint should be dismissed only if the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law."); *accord, Seibu Corp. v. KPMG LLP*, 2001 WL 1167317 *5 (N.D.Tex. 2001) (dismissal not appropriate if determining whether the limitations period has lapsed requires a factual determination of when the claims began to accrue).

The Court believes that the factual issue of whether a trust *actually existed* may be more appropriately decided on summary judgment or at trial. Here, Plaintiff will have the benefit of the doubt since dismissal under Rule 12(b)(6) is a disfavored remedy in the law. Accordingly, Defendants' motion to dismiss the suit for lapse of the limitations period is hereby **DENIED**.

      **E.**      **Plaintiff has 10 days to demonstrate to the Court why her claim for replevin should not be dismissed or to amend her complaint**

Lastly, in their reply brief, Defendants allege that Texas law does not recognize an action for replevin in manner that Plaintiff proposes. *See* Def.'s Reply Br. at 4-5. An action for replevin, they argue, pertains to a situation in which the plaintiff gives security for and holds the property at issue until the Court determines who owns it – a procedure permitted under Rule 701 et seq. of the Texas Rules of Civil Procedure. *See id*.

Since this allegation was raised in Defendants' reply brief, Plaintiff has not had an opportunity to respond. However, the Court has reviewed Texas caselaw on the subject and finds Defendants' challenge quite convincing. *See, e.g.*, Tex.Jur.3d, Replevin §1 ("The term ['replevin'] is currently used in reference to the procedure whereby one secures the release of property seized in an auxillary proceeding by executing a bond."). For that reason, the Court will *sua sponte* dismiss Plaintiff's claim for replevin within 10 working days from the date of this opinion unless Plaintiff amends her complaint to plead a proper cause of action or shows why dismissal would be inappropriate. *See First Gibraltar Bank v. Smith*, 62 F.3d 133, 135 (5th Cir.1995); *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002) (sua sponte dismissals  for failure to state a claim are appropriate but are erroneous when the court has not afforded the claimant notice and an opportunity to amend the complaint or otherwise respond).

### III.  CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Rule 12(b)(6) Motion to

Dismiss the lawsuit on the issue of limitations.  However, Plaintiff has 10 days from the date of this

ruling either to show why her claim for replevin should not be dismissed, or to amend her complaint

to plead a proper cause of action.

**IT IS SO ORDERED.**

**SIGNED: November 1, 2005.**

_____
**JERRY BUCHMEYER**
**SENIOR UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**