IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILED
July 7, 2006

CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **DANIELLE DIANE DELHOMME** | § |
| | § |
| Plaintiff, | § |
| | § |
| vs. | § |
| | § Civil Action No. 3:05-CV-505-R |
| **CAREMARK RX INC., and** | § |
| **CAREMARK PCS, f/k/a** | § |
| **ADVANCEPCS** | § |
| | § |
| Defendants. | § |

## MEMORANDUM OPINION

Plaintiff Danielle Diane Delhomme has filed suit against Caremark Rx., Inc. and CaremarkPCS f/k/a Advance PCS (collectively, the "Defendants") to recover shares of Caremark Rx stock that she claims she is owed. Defendants have counterclaimed for costs and attorney fees. Now before the Court are Defendants's motions for summary judgment on Plaintiffs' claims (Dkt. No. 26) and on its counterclaim for costs and attorneys fees (Dkt. No. 26, Ex. 2). For the reasons discussed below, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Defendants' Motion for Attorney's Fees.

### I. BACKGROUND

This case arises from a 1996 merger of Advance Health Care, Inc. ("AHC") into Advance Paradigm, Inc ("API"). Subsequent to the 1996 merger, API became AdvancePCS. In 2004, AdvancePCS was acquired by Caremark, Inc. and was renamed CaremarkPCS. Today, Caremark PCS is currently a wholly owned direct subsidiary of Caremark, both of which are the only named defendants in this case.

1

Under the 1996 Agreement and Plan of Merger between AHC and API (the "Merger Agreement"), all shares of API existing before the merger were split 250:1. In addition, all outstanding shares of AHC were cancelled and, in lieu of that cancellation, AHC shareholders received a pro-rata portion, on a fully-diluted basis, of 12,500 new shares of API common stock to be issued in the merger. (Houk Decl. Ex 1 at 2; Jt.App. 56-57). As explained in the Merger Agreement, it was calculated that each holder of AHC common stock was entitled to receive a predetermined number API shares, at a ratio of approximately 46:1.[1] AHC's shareholders approved the merger and received new shares of API when the merger was complete.

Plaintiff Danielle Diane Delhomme (f/k/a Diane Lanford Arthur) owned 1,717 shares of AHC stock prior to the 1996 merger. (Delhomme Depo. at 17:6-21). As a result of the merger, her shares of AHC were cancelled in exchange for 78,750 shares of API. (*Id.* at 21, 27-28). API shares then underwent two, 2:1 stock splits – one in October 1999 and the other in November 2001, after the company changed its name to AdvancePCS. (First Am. Compl. ¶15; First Am. Answer ¶15). In March 2004, Advance PCS was acquired by Caremark. (First Am. Compl. ¶16; First Am. Answer ¶16). As part of that acquisition, Advance PCS and changed its name to CaremarkPCS. (Id.). Caremark PCS is today a wholly-owned, direct subsidiary of Caremark. (Id.). According to the agreement governing Caremark's acquisition of AdvancePCS, Advance PCS shareholders were entitled to receive 1.935 shares of Caremark stock and $7.01 in cash for every share of AdvancePCS she owned. (First Am. Compl. ¶17; First Am. Answer ¶17).

Delhomme now claims that she was entitled to a 250:1 stock split on the shares of API that she received as part of the 1996 merger. By her calculation, she should have received 419,250

---

[1] The parties dispute the ratio that was to be used in the conversion.

shares of API common stock in 1997 instead of only 78,750 shares. In light of the subsequent splits of API and AdvancePCS stock and the terms of Caremark's acquisition of Advance PCS in March 2004, Delhomme estimates that she is now entitled to 2,635,470 shares of Caremark stock and $9,547,620.00 in cash.

On or about January 3, 2005, Plaintiff sent a letter to Caremark demanding that the company issue certificates for the 1,021,500 additional shares of AdvancePCS that she was allegedly owed; convert her 1,362 shares of AdvancePCS stock into 2,635,470 shares of Caremark stock; and pay her $9,547,620.00 in cash. (First Am. Compl. ¶18). Caremark refused to grant her request, ultimately finding that Delhomme's shares were not subject to the 1996 stock split since the split had occurred before the AHC merger – i.e., before Delhomme was an API shareholder. (Jt.App. 23). Plaintiff filed this lawsuit in state court on February 4, 2005. Defendants removed the case to this Court on March 14.

Plaintiff has asserted two claims against Defendants. First, Plaintiff alleges that Defendants are liable to her in replevin for 1,021,500 shares of AdvancePCS stock. (First Am. Compl. ¶¶20-22). She claims that those shares were initially issued to her in 1996 but were wrongfully withheld by the company after she made a demand for them in early 2005. (*Id*. ¶¶20-21). In the alternative, Delhomme requests that the Court to impose a constructive trust on those shares in her benefit and compel their delivery. (*Id*. ¶21). Second, Plaintiff seeks a declaratory judgment from the Court establishing that she is entitled to 1,362,000 shares of AdvancePCS stock and a further declaration that she is thereby entitled to $2,635,470 shares of Caremark stock and $9,547,620 under the terms of Caremark's acquisition of AdvancePCS.

## II. ANALYSIS

Defendants have moved for summary judgment on all claims. In part, they argue that Plaintiff's claims accrued, at the very latest, in 1996. Therefore, Defendants argue that Plaintiff's claims are barred by the applicable statutes of limitations. (*See* Def.'s Mot. Br. at 5). By contrast, Plaintiff argues that her claims accrued in January 2005, when she unsuccessfully demanded that Defendants issue her the shares that were wrongfully withheld.

### A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure permits summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is material if it involves a fact that might affect the outcome of a suit under governing law. The court must decide all reasonable doubts and inferences in the light most favorable to the non-moving party. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Conclusory allegations will not suffice as summary judgment evidence. *See Hinsley v. Boudloche*, 201 F.3d 638, 643 (5th Cir. 2000).

Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its burden by showing that there is an absence

4

of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. Once the moving party has satisfied this burden, the non-moving party may go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file set forth specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment will be granted "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Plaintiffs Claims are Time-Barred

Defendants contend that regardless of the merits of Plaintiff's claims, they are barred by the applicable statutes of limitations. Plaintiffs' brief in opposition to Defendant's motion mostly attempts to show that Delhomme was entitled to a 250:1 stock split. Plaintiff devotes only four paragraphs of her entire brief to address Defendants' principal argument – i.e., that the statute of limitations had lapsed on her claims when she filed suit. After carefully considering the briefing before the Court and evidence submitted, the Court concludes that it does not have to resolve whether Plaintiff was entitled to the additional shares that she claims. Regardless of the merits of her interpretation of the merger agreement, Plaintiff's claims are barred by the applicable statutes of limitations.

Plaintiff has sued Defendants for replevin and for a declaratory judgment. A two year statute of limitations governs claims for conversion and replevin in Texas. *See* Tex. Civ. Prac. & Rem. Code §16.003; *see also, Kubosh v. City of Houston*, 96 S.W.3d 606, 608 (Tex.App.– Houston [1st Dist.] 2002, pet denied) ("Suits for the conversion of personal property and the taking or detaining

5

of personal property are governed by a two-year statute of limitations.").[2] Although the Texas Civil Practice and Remedies Code does not provide an express statute of limitations for a declaratory judgment action, it is safe to assume (without deciding) that, at the very most, a four-year statute of limitations would apply to Plaintiff's claim for a declaratory judgment.[3]

In Texas, a cause of action "accrues" and the applicable limitations period begins to run "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 3 (Tex. 1996). The accrual date for a cause of action may be deferred, however, in two situations. The first situation, known as fraudulent concealment, occurs when a defendant has attempted to conceal his or her wrongdoing in a fraudulent manner and the plaintiff has reasonably relied on the defendant's fraudulent conduct. In that situation, the accrual date is deferred until the fraud is discovered or could have been discovered with reasonable diligence. *See Velsicol Chemical Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997); *S.V.*, 933 S.W.2d at 6 (citations omitted).

---

[2]Texas courts have held that a two-year statute of limitations applies to claims for conversion of stock certificates and their recovery. *See Pierce v. Haverlah's Estate*, 428 S.W.2d 422 (Tex. Civ. App.–Tyler 1968, writ ref'd n.r.e.); *Davidson v. Atmar*, 243 S.W. 662, 664 (Tex.Civ.App.–Beaumont 1922, no writ).

[3]Because a declaratory judgment action is a procedural device used to vindicate substantive rights, it is generally governed by the statute of limitations for the legal remedy underlying the claim. Consequently, to determine what statute of limitations should apply to an action for a declaratory judgment, one must look to the legal remedy underlying the cause of action. *See, e.g., Transportation League, Inc. v. Morgan Exp., Inc.*, 436 S.W.2d 378, (Tex.Civ.App.– Dallas 1969, writ ref'd n.r.e.); *Outlaw v. Bowen*, 285 S.W.2d 280, 284 (Tex.Civ.App.– Amarillo 1955, writ ref'd n.r.e.) ("the statutes of limitation do not apply to... a suit for a declaratory judgment, at least until the provisions of such are set in action by the actual occurrence of a controversy.") (citing *Murphy v. Honeycutt*, 199 S.W.2d 298 (Tex.Civ.App.– Texarkana 1946, writ ref'd)). Here, Plaintiff's claim for a declaratory judgment is premised on her claim that she was initially entitled to more shares than she actually received under the merger agreement between AHC and API. Even if the Court were to construe this claim as either an "action for a debt" or an action encompassed by the residual limitations period, a four year statute of limitations would apply at the most. *See* Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(3) (four year limitations period for actions for a "debt"), 16.051 (four year residual limitations period).

The second situation where the accrual date may be deferred is when it is exceptionally difficult for the injured party to learn of the wrongful act because of the nature of his or her injury. In those situations, the "discovery rule" doctrine defers the accrual date for a cause of action until the plaintiff knows, or by exercising reasonable diligence should know, of the facts giving rise to the claim. *See Wagner v. Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001); *S.V.*, 933 S.W.2d at 6. In order for the discovery rule to apply, the plaintiff must show that "the nature of the injury...is inherently undiscoverable and the evidence of injury is objectively verifiable." *S.V.*, 933 S.W.2d at 6 (quoting *Computer Assoc. International, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)).

Plaintiff contends that her causes of action did not accrue until January 2005 – the date when Defendants failed to honor her request for the extra shares that she claims were withheld. (*See* Pl.'s Resp. at 8-9). It was at that time, she argues, that Defendants "wrongfully took or detained [her] property." (*Id.* at 9). However, Plaintiff's own deposition testimony does not support her argument. At her deposition, she admitted that neither a contractual relationship nor a trust relationship existed between her, API, or any of API's successor entitles regarding the shares that were allegedly withheld. (Delhomme Depo. 47:22-48:16). Delhomme also admits at her deposition that she did not have any communications with API about any missing shares after she received the API stock issued to her in March 1997. (*Id.*).

After reviewing the evidentiary record in this case, the Court finds that Plaintiff's claims accrued on or about March 1997, when she received stock certificates representing, in total, 78,750 shares of API stock. (Pl.'s App. 9, 13-22). It is undisputed that Plaintiff held 1,717 shares of AHC before the merger. It is undisputed that she received the proposed plan of merger between AHC and

7

API before the merger occurred; consented to the terms of the proposed merger agreement; and was aware that the merger had been consummated by late 1996. Moreover, API had already publicly filed a Form 10-Q financial disclosure statement with the SEC in November 1996. That disclosure statement expressly mentioned that the company had merged with AHC and that a 250:1 stock split on API stock had also occurred that year. For these reasons, Plaintiff should have known that she received less than the number of shares that she expected when she received the stock certificates that were sent to her on March 27, 1997. To the extent that she believed that she was entitled to a 250:1 stock split on the shares of API that she received under the API/AHC merger, she was on sufficient notice that her shares had not been split in that manner when she received only 78,750 shares in March 1997 and should have diligently made demand for those shares long before 2005.

Furthermore, Plaintiff cannot rely on either the fraudulent concealment doctrine or the discovery rule to defer the accrual date on her claims. There is no evidence before the Court that Defendants committed any fraud or attempted to conceal any wrongful conduct in a fraudulent manner. Moreover, upon receiving her March 1997 distribution of API stock, Plaintiff could have made a simple arithmetic calculation to determine if she received all the shares that she was entitled to as the result of the 1996 merger. The legal injury that occurs when one receives less than the total number of shares that he or she is entitled to receive pursuant to a merger agreement is a legal injury that is *not* inherently undiscoverable. In addition, the evidence of such an injury is objectively verifiable. Delhomme only needed to compare the number of shares she received in 1997 to the relevant terms of the merger agreement in order to verify whether she received the correct number of shares of API that she was entitled to after the merger. Consequently, she cannot rely upon the discovery rule to defer the date on which her claims accrued.

8

In conclusion, the Court finds that by March 1997 (or shortly thereafter), Delhomme had already received the AHC/API merger agreement, had approved the terms of the proposed merger, and had received a substantial number of shares of API after the merger was executed. If Plaintiff believed that she was entitled to more shares than she received, then her claims accrued in 1997 – by then, she would have had a claim against API and any of its successor entities for not receiving all the shares that she expected to receive. Because Delhomme did not file suit until February 4, 2005, more than seven years later, her claims are time-barred under the relevant statutes of limitations.

C.   **Defendants are not entitled to Attorneys Fees**

Defendants have moved for summary judgment on their counterclaim for attorneys fees. The Merger Agreement between AHC and API expressly contemplates that the "prevailing party" in any legal action arising "in connection with" the Agreement and Plan of Merger shall be entitled to recover its reasonable attorneys' fees and other costs:

> If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because of all alleged [*sic*] dispute, breach, default, or misrepresentation in connection with any of the provisions of this agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which they may be entitled.

(Jt. App. 35) (Merger Agreement ¶9.7). Defendants argue that an award of attorneys fees is appropriate in this situation because Plaintiff has admitted in her deposition testimony that her claims arise from the conversion of AHC stock into API stock, which was governed exclusively by the Agreement and Plan of Merger. (*See* Pl.'s Ex. B). Therefore, they argue, as successful movants on their motion for summary judgment, they are entitled to recover costs and fees from the Plaintiff under §9.7 of the Merger Agreement. (*See* Def.'s Mot. at 2 (Ex. 2 to Joint Motion Submission)).

9

In response, Plaintiff asserts that her causes of action "are not based on the [Merger] Agreement" but instead on her demand for the shares and Defendant's refusal to grant her the shares that she demanded. (Pl.'s Resp. Br. at 9-10). More significantly, Plaintiff contends that she is not in privity of contract with Defendants under the Merger Agreement and, therefore, cannot be held liable on it. (*See id*. at 10) ("Defendants have not shown any authority for awarding contractual attorneys fees against a non-party to the contract."). Since both parties to the merger agreement were AHC and API – both of which are now Caremark – she argues that "Defendants cannot unilaterally contract with themselves to make Plaintiff liable to them for attorneys' fees." (*Id*.).

The Court finds that Defendants are not entitled to reimbursement for costs and attorneys fees under ¶9.7. A corporation is a limited liability entity, and corporate shareholders are ordinarily not liable for the corporation's contractual debts. Defendants cannot show any authority for the proposition that a shareholder's mere approval of a fundamental corporate change like a merger will subject that shareholder to personal liability on the merger agreement that was approved. In this regard, a shareholder's mere approval of a fundamental corporate change like a merger generally does not strip the shareholder of limited liability and subject the shareholder to personal liability under the contract, especially when the shareholder wishes to challenge his or her rights as a shareholder under the new entity.

By approving the fundamental corporate change between AHC and API, Delhomme, as an AHC shareholder, did not assume contractual liability under the agreement. Only the parties to the agreement – AHC and API – are subject to liability under the contract. Accordingly, Defendants' claim for attorneys fees under ¶9.7 of the merger agreement is without merit.

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's claims and **DENIES** Defendant's Motion for Attorneys Fees.

**IT IS SO ORDERED.**

**SIGNED: July 7, 2006.**

*Jerry Buchmeyer*

_____
**JERRY BUCHMEYER
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**